Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3427<br>02 C 4277<br>03 C 5929 | **DATE** | November 22, 2004 |
| **CASE TITLE** | Sara Lee v. Daymark<br>National City Bank v. Sara Lee | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)■ [Other docket entry] Sara Lee Corporation's motion for summary judgment is granted as to Count I of Sara Lee's complaint (breach of contract); National City Bank's complaint; and Daymark's counterclaim. The parties may submit an appropriate judgment order by December 3, 2004. ENTER MEMORANDUM OPINION.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| X | Notices MAILED by judge's staff. | | NOV 23 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | ov | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | | date mailed notice | |
| KAM | courtroom deputy's initials | | KAM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |
| | | (Reserved for use by the Court) | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SARA LEE CORPORATION, ) | | |
| Plaintiff, ) | | |
| v. ) | No. 02 C 3427 | |
| DAYMARK GROUP, INC., ) | | |
| Defendant. ) | | |

| | | |
|---|---|---|
| NATIONAL CITY BANK, ) | | |
| Plaintiff, ) | | |
| v. ) | No. 02 C 4277 | |
| SARA LEE CORPORATION, ) | | |
| Defendant. ) | | |

| | | |
|---|---|---|
| NATIONAL CITY BANK, ) | | |
| Plaintiff, ) | | |
| v. ) | No. 03 C 5929 | |
| SARA LEE CORPORATION, successor to ) | | |
| BEST KOSHER FOODS CORPORATION, ) | | |
| Defendant. ) | | |

## MEMORANDUM OPINION

Before the court is Sara Lee Corporation's motion for summary judgment. For the reasons stated below, the motion is granted.



This is a breach of contract case involving a "Logistics Services Management Agreement" (the "Sara Lee Agreement") between plaintiff Sara Lee Corporation ("Sara Lee") and defendant Daymark Group, Inc. ("Daymark"). Pursuant to the Sara Lee Agreement, which was entered into in September 1999, Daymark arranged for the storage and transportation of packaging, ingredients, and frozen foods from Sara Lee's vendors to Sara Lee's processing and manufacturing facilities. Daymark acted as a middleman by contracting (itself) with third-party carriers and warehousemen; Daymark was responsible for paying those third parties for the storage and transportation. For its services, Daymark received a monthly logistics management fee from Sara Lee.

The dispute between Sara Lee and Daymark arose in the early fall of 2001 when Sara Lee learned from some of the third-party carriers that Daymark was not paying the third parties for the services rendered to Sara Lee. The carriers complained to Sara Lee and threatened not to deliver Sara Lee's goods unless they received payment. Sara Lee attempted to work with Daymark and, for a time, continued to pay Daymark its monthly fee in addition to paying Daymark for services that had been arranged, but not yet paid for. In order to ensure the distribution of Sara Lee's products, Sara Lee eventually ended up paying some of the carriers directly and then stopped "reimbursing" Daymark when it became clear that Daymark was not paying the third parties and had no intention of

doing so. Sara Lee submits that it "double paid" for the same services--once to Daymark and once to a third-party carrier or warehouseman because Daymark failed to pay the third parties itself.

Sara Lee brought the instant action in May 2002, alleging breach of contract and unjust enrichment and seeking an accounting. Daymark counterclaimed for breach of contract and unjust enrichment. National City Bank ("National"), which asserts that it holds a security interest in Daymark's accounts receivable, has intervened in the Sara Lee-Daymark case, No. 02 C 3427, and has filed its own case against Sara Lee for breach of contract, an accounting, and unjust enrichment, No. 02 C 4277. National also filed a similar complaint in the Southern District of Ohio against the Bessin Corporation ("Bessin"), which was also known at one time as Best Kosher Foods Corporation. Bessin is now known as the Sara Lee Foods division of Sara Lee. The Bessin case, 03 C 5929, was transferred to this District and has been consolidated with the aforementioned cases. In the Bessin case, National asserts breach of a contract substantially similar to the Sara Lee Agreement, as well as claims for an accounting and unjust enrichment. For convenience, we will refer to both Daymark and National as "Daymark" where appropriate.

On October 8, 2002, we held a Rule 16 conference in this case. During the conference, the parties indicated that they disagreed on

the interpretation of the Sara Lee Agreement--specifically, about what it obligated Sara Lee to do regarding paying Daymark for its services.

The relevant portions of the Sara Lee Agreement are as follows:

> B. Daymark will contract with all necessary common and/or contract carriers and warehousemen for the logistics services required for the Project. At its election, Sara Lee Bakery will have the ability to review the selection of warehousemen and carriers prior to contracting by Daymark. Daymark shall not acquire title to any of the goods it contracts for shipment or storage. Daymark shall timely pay sums due to any carriers or warehousemen with which Daymark has entered into a written contract, provided that, Sara Lee Bakery timely reimburses Daymark as provided in subparagraph (F) below.
> . . .
> F. On a weekly basis, Daymark shall invoice Sara Lee Bakery for the estimated cost of the transportation and warehousing expenses incurred by Daymark with regard to the Project. Subsequently, Daymark will on a timely basis, invoice Sara Lee Bakery for any variance between the estimated expenses and the actual expenses. . . . Sara Lee Bakery agrees that it is responsible to reimburse Daymark for all documented transportation and warehousing expenses incurred in connection with the Project, and to pay Daymark the full amount of invoices sent by Daymark to Sara Lee Bakery within twenty-five (25) days from the date of each invoice.

(Complaint, Ex. B, ¶¶ 1B, 1F.)

After the Rule 16 conference, we issued a ruling interpreting the Sara Lee Agreement as follows, in relevant part:

> We have reviewed the "Logistics Services Management Agreement" entered into by Sara Lee and Daymark. Our interpretation of the contract is that, regarding payments to third-party carriers and warehousemen, Sara Lee's sole obligation to Daymark is to <u>reimburse</u> Daymark for amounts actually paid by Daymark to the third parties for the transportation and storage of Sara Lee's goods.

> The parties may proceed on the basis of this contract interpretation.

(Minute Order, October 16, 2002.) National moved for reconsideration of that ruling, arguing that the Sara Lee Agreement does not state that Sara Lee's obligation is limited to charges that Daymark actually paid to third parties. Rather, National contended, the Sara Lee Agreement requires Sara Lee to pay Daymark's invoices for charges Daymark <u>incurred</u> but did not yet necessarily <u>pay</u>.

In our memorandum opinion denying National's motion, we stated as follows:

> We adhere to our view that it would be unreasonable to interpret the contract to require Sara Lee to pay Daymark for expenses that Daymark invoiced but did not actually pay to the third parties for transportation and storage. "To the extent that a contract is susceptible of two interpretations, one of which makes it fair, customary, and such as prudent persons would naturally execute, while the other makes it inequitable, unusual, or such as reasonable persons would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred. . . . Courts will construe a contract reasonably to avoid absurd results." <u>Horbach v. Kaczmarek</u>, 988 F. Supp. 1126, 1129 (N.D. Ill. 1997).

(Memorandum Opinion, Sept. 15, 2003.) We also suggested that the case was ripe for a summary judgment motion by Sara Lee. Accordingly, Sara Lee filed a motion for summary judgment. National and Daymark thereafter moved for leave to file their own motion for summary judgment. We denied that motion and indicated that we would treat as defendants' response to Sara Lee's motion the brief defendants submitted with the motion for leave to file.

## DISCUSSION

**A.  The Bessin Agreement**

This court has already interpreted the Sara Lee Agreement to require Sara Lee to reimburse Daymark for actual storage and transportation expenses.  Sara Lee maintains that we should adopt the same interpretation of the Agreement at issue in the Bessin case (the "Bessin Agreement") because its relevant provisions are very similar to those of the Sara Lee Agreement.  The Bessin Agreement provides in relevant part:

> (b)  Daymark will contract with all necessary common and/or contract carriers for the logistics services required for the Project.  Each shipment accepted by Daymark for transportation under this Agreement shall be accepted and transported subject to the conditions of a bill of lading issued by Bessin.  To the extent any of the terms of Bessin's bill of lading are inconsistent with the terms hereof, the terms of this Agreement will prevail.  Daymark shall not acquire title to any of the goods it contracts for shipment.  Daymark shall timely pay sums due to any carriers; provided, that, Bessin timely reimburses Daymark as provided in subparagraph (3) below.
> . . .
> (3)  _Expense Reimbursement_
> On a weekly basis, Daymark shall invoice Bessin for the actual third party transportation expenses incurred by Daymark with regard to the Project and shall provide Bessin with such supporting documentation as it may reasonably request in connection therewith.  Any discrepancies, whether higher or lower, between estimated and actual transportation expenses will be adjusted in the subsequent month's payment for services. . . . Bessin agrees that it is responsible to reimburse Daymark for all actual third-party transportation expenses incurred in connection with the Project, unless such expenses are the result of or are attributable to the negligence of Daymark, its employees, or agents, and to pay Daymark the full amount of invoices sent by Daymark to Bessin within

>twenty-five (25) days from the date of each invoice and
>receipt of requested documentation thereof.

(Bessin Agreement, ¶¶ (1)(b), (3).) Daymark offers no reason to consider the Bessin Agreement differently; indeed, Daymark also treats the agreements together. We agree with Sara Lee that the Bessin Agreement should be treated as identical to the Sara Lee Agreement for purposes of this summary judgment motion. Accordingly, we hold that our prior interpretation of the Sara Lee Agreement applies equally to the Bessin Agreement.

**B.  Summary Judgment**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

Sara Lee argues that, given this court's interpretation of the Sara Lee Agreement (and now the Bessin Agreement as well; we will refer to them as the "Agreements"), there is no genuine issue that Daymark failed to pay numerous third-party invoices and therefore breached the Agreements.

Daymark admits that in early fall 2001, it began failing to pay third-party invoices, and still has not paid the particular invoices in question. Daymark does not quibble with Sara Lee's arithmetic regarding the double payments, but stubbornly clings to its stance that Sara Lee is on the hook for third-party transportation and storage services that were arranged for by Daymark and provided by the third parties, even if Daymark did not pay the third parties. In fact, according to Daymark, Sara Lee is liable to Daymark on invoices for transportation and storage services that Sara Lee received. Daymark repeats its tortuous argument regarding the meaning of the word "incurred" as used in the Agreements' phrase "expenses incurred," which we have previously rejected. Daymark also points to deposition testimony that, in the parties' course of dealing, Sara Lee did not condition its payments to Daymark on evidence that Daymark had paid the third parties.

Daymark's position that Daymark's payment to the third parties is "irrelevant" to Sara Lee's obligation to pay Daymark is simply untenable. Daymark focuses on the language of the Agreements, which it (as well as Sara Lee) contends is "unambiguous." As we previously indicated, we disagree. The key sentence in the Agreements reads (with insignificant variation between the Sara Lee and Bessin Agreements): "Daymark shall timely pay sums due to any carriers or warehousemen with which Daymark has entered into a written contract, provided that, Sara Lee Bakery timely reimburses Daymark as provided [below]." There is an arguable tension between the phrase "provided that" and the word "reimburse," especially considering the referenced paragraph, which sets up a mechanism that contemplates Sara Lee "reimbursing" Daymark for "expenses incurred" without expressly stating that they must actually have been paid. These poorly-worded provisions result in a head-spinning chicken-and-egg situation.

Given this ambiguity, we stated in our previous opinion that when a contract is susceptible of two interpretations, we must construe a contract reasonably to avoid absurd results. And, again, it would be absurd to interpret the Agreements to require Sara Lee to pay Daymark for expenses that Daymark invoiced but never actually paid to the third parties for transportation and storage. The mechanics by which the parties exchanged invoices and payments are of little relevance to the question of ultimate

liability. The services that Sara Lee bargained for were not just the third parties' transportation and storage; Sara Lee also bargained for Daymark's making payments to the third-party carriers. Daymark breached the contract by failing to pay the carriers, and the breach was material. "A material breach occurs where the covenant not performed is of such importance that the contract would not have been made without it." Dragon Constr., Inc. v. Parkway Bank & Trust, 678 N.E.2d 55, 58 (Ill. App. Ct. 1997). Daymark's payment to the third-party carriers was such a covenant. Indeed, Sara Lee was left scrambling to have its products shipped and warehoused when Daymark failed to pay the third parties, and Daymark presents no evidence to the contrary.

Daymark's counterclaim (and National's claim) is without merit. "Under the material breach doctrine, 'a party to a contract is discharged from his duty to perform where there is a material breach of the contract by the other party.'" Dragon, 678 N.E.2d at 58. Stated slightly differently, a party cannot have the benefits of a contract unless it has also performed the obligations. See McBride v. Pennant Supply Corp., 623 N.E.2d 1047, 1052 (Ill. App. Ct. 1993). Daymark asserts that Sara Lee's rights under the Agreements in the event of Daymark's breach do not include refusing to pay Daymark's invoices because the Agreements provide that neither their termination nor expiration releases Sara Lee "from any obligation to pay any sum that may be owing" to Daymark. (Sara

Lee Agreement, ¶ 5; Bessin Agreement, ¶ 14.) This argument is unavailing, though, because this contractual provision does not specify what "may be owing" to Daymark. The critical issue is identifying what is owing, and we have already decided that the Agreements do not render Sara Lee liable to Daymark for expenses that Daymark never actually paid to the third parties.

An alternative basis for granting summary judgment in favor of Sara Lee and against Daymark and National is Sara Lee's unjust enrichment claim. In Illinois, a claim for unjust enrichment exists when a defendant (1) receives a benefit; (2) to the plaintiff's detriment; and (3) the defendant's retention of the benefit would be unjust. See TRW Title Ins. Co. v. Security Union Title Ins. Co., 153 F.3d 822, 828 (7th Cir. 1998) (citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 679 (Ill. 1989)). Here, Daymark received and retained a benefit from Sara Lee--payments for third-party services--to Sara Lee's detriment, in that Sara Lee had to pay again for the same services. In addition, it would be unjust for Daymark to retain the benefit because Daymark had already received compensation for its services through a separate management fee from Sara Lee. The reimbursement monies were meant for the third-party carriers, not for Daymark to retain itself.

## CONCLUSION

Sara Lee Corporation's motion for summary judgment is granted as to Count I of Sara Lee's complaint (breach of contract); National City Bank's complaint; and Daymark's counterclaim. The parties may submit an appropriate judgment order by December 3, 2004.

DATE:   November 22, 2004

ENTER:  _____
        John P. Grady, United States District Judge